STATE EX REL. SHEA, Appellant, vs. EVENSON, Respondent.

*January 14—February 9, 1915.*

*Officers: Removal of town treasurer: Order of removal as proof of facts: Defalcation: Sufficiency of evidence: Constitutional law: Eligibility to office: "Being a defaulter."*

1. An order made by a circuit judge pursuant to sec. 976, Stats., removing a town officer for wilful and corrupt official misconduct, is proof in a later civil action of the fact of removal but is not evidence of the facts upon which the order was based.
2. In an action to try the title to the office of town chairman the fact that there had been a defalcation by defendant when he held the office of town treasurer is *held* to be established by the evidence.
3. In sec. 3, art. XIII, Const., providing that "no person being a defaulter . . . to this state or to any county or town therein . . . shall be eligible to any office of trust, profit or honor in this state," the words "being a defaulter" refer to persons presently in default and not to one who has made good his defalcation.

APPEAL from a judgment of the circuit court for Iron county: G. N. RISJORD, Circuit Judge. *Affirmed.*

*Quo warranto* to try the title to the office of chairman of the board of supervisors of the town of Mercer, Iron county. At the election April 7, 1914, the relator received forty-eight votes, the defendant fifty-eight votes, and one Bovee eight votes for the office. The relator claimed, however, that the defendant was at that time a defaulter to the town, and hence ineligible to hold office under sec. 3 of art. XIII of the constitution, which declares that "No member of Congress, . . . and no person being a defaulter to the United States or to this state, or to any county or town therein, . . . shall be eligible to any office of trust, profit or honor in this state."

The complaint alleged that the defendant was treasurer of the town from April, 1911, until January 6, 1914, and while treasurer converted more than $600 of the town funds to his own use, and was still a defaulter to the town; that in a removal proceeding before Hon. G. N. RISJORD, circuit judge,

it was found by him that the defendant had converted $600 of the town funds to his own use and thereby was guilty of wilful and corrupt official misconduct. It was further alleged that the defendant was removed from office by order of said judge on January 6, 1914.

The defendant, by answer, denied that he was a defaulter, and alleged that he accounted for and paid over to his successor in office all the moneys of the town on or about January 6, 1914.

Upon the trial and against the defendant's objections the plaintiff introduced the record of the removal proceedings and further showed that he filed an oath of office in due season. Thereupon he rested his case. It appeared from the record aforesaid that the order of removal, dated January 6, 1914, was based upon a number of findings of fact. Among these findings was one to the effect that between April 1, 1912, and July 5, 1912, the defendant, *Evenson,* "unlawfully converted to his own use $600 of the funds of said town and in so doing was guilty of wilful and corrupt official misconduct." By a number of other findings it was determined that at a number of times during the years 1912 and 1913, and while the defendant was town treasurer, the supervisors of the town pretended to allow claims against the town, amounting in all to more than $700, in favor of sundry persons named who in fact had no legal claims against the town, and that orders were issued for the payment of said claims, signed by the chairman and town clerk, which were paid by the defendant as treasurer out of town funds, and that in allowing said claims and issuing said orders and in paying the same said supervisors, clerk, and treasurer were guilty of wilful and corrupt official misconduct. Upon this proof the relator rested the case. The defendant was sworn in his own behalf and testified that tax commission auditors examined his books in July, 1913, and claimed that he was short $602 in his school-fund moneys; that he had no idea how he came to be short;

that he made good the shortage after the hearing in the removal proceeding and paid over to his successor in office every cent which the books showed.

Upon rebuttal one of the tax commission auditors who examined the defendant's books testified that he made an examination of the defendant's official books and that he found a shortage of $602.74 in the school funds, which occurred between April 1, 1911, and June 29, 1912; further, that he spoke to defendant about the matter and the defendant said that he knew he was short. Upon this evidence the court directed a verdict in favor of defendant and adjudged the defendant to be rightfully in possession of the office, and from this judgment the relator appeals.

The cause was submitted for the appellant on the briefs of *J. & M. Van Hecke* and *A. L. Ruggles,* and for the respondent on a brief signed by *George C. Foster,* attorney, and *Wm. F. Shea,* of counsel.

Counsel for respondent argued, among other things, that he was not a defaulter at any time. In a case of this kind, the failure or refusal to account and pay over must be *wilful* and *corrupt.* 29 Cyc. 1385, par. e; *State ex rel. Broatch v. Moores,* 52 Neb. 770, 73 N. W. 299; 2 Words & Phrases, 1930, "Defaulter." If a defaulter at any time, he was not at the time of his election to the office of chairman, having purged himself of the default by reimbursing the town long prior to such election. *State ex rel. Broatch v. Moores,* 52 Neb. 770, 73 N. W. 299; *State v. Dunn,* 11 La. Ann. 549.

WINSLOW, C. J. The questions in this case may be briefly stated as follows: (1) Are the findings and order of removal evidence in this action of the facts found in the removal proceeding? (2) If not, was there other sufficient evidence of the defendant's defalcation? (3) The defendant having made good his shortage before the election, was he ineligible under sec. 3 of art. XIII of the constitution?

1. The first question must be answered in the negative. The present is substantially a civil action between two citizens to determine the title to office. It is well established that a judgment in a criminal action is not proof of anything in a later civil action, except of the fact of conviction and the legal consequences flowing therefrom. It cannot be given in evidence to establish the truth of the facts on which it was rendered. 1 Greenl. Ev. § 537; 2 Black, Judgm. § 529. *A fortiori* must this be true of the order of removal in the present case, because it is an administrative order only and not a judgment. It is doubtless conclusive proof of the fact of the removal, but in another action between other parties it is not evidence of the facts on which the removal was based. 23 Cyc. 1220. There was therefore no proof of any defalcation in the case when the plaintiff rested.

2. The second question must be answered in the affirmative. The defendant's own testimony showed the fact of the $600 shortage in the school money and the evidence of the auditor made the matter certain. There was, however, no evidence showing any other default or misconduct. The alleged corrupt payment of illegal town orders was unproven.

3. Sec. 3 of art. XIII of the constitution says that "No member of Congress, . . . no person convicted of any infamous crime in any court within the United States, and no person being a defaulter to the United States or to this state, or to any county or town therein, or to any state or territory within the United States, shall be eligible to any office of trust, profit or honor in this state."

Of course, it is true that if a public officer wilfully converts to his own use public moneys in his hands he is a defaulter, and the fact that he subsequently makes good the defalcation does not relieve him from prosecution and punishment for his offense. In this sense it is true that once a defaulter always a defaulter, but is this the sense in which the word is used in the section under consideration? The words

are peculiar: "No person *being a defaulter to* the United States," etc., "shall be eligible." They indicate an apparent attempt to reach persons who at the time of the election are in a state of default to either of the public governmental agencies named, including noncriminal as well as criminal defaulters. Ordinarily speaking, an officer who, though once short in his accounts, has made the shortage good is not thereafter considered as "being a defaulter to" any branch of the government. Again, the section contains a special clause making ineligible any person "convicted of any infamous crime." Taking the whole section into consideration, the court is of opinion that the words "being a defaulter" in the section were intended to refer to persons presently in default, *i. e.* owing money received officially which they ought to but refuse to pay to some one of the governmental agencies named.

It results from these views that the judgment must be affirmed.

*By the Court.*—It is so ordered.