Bussard, Plaintiff in error, vs. The State, Defendant in error.

*October 13—November 7, 1939.*

*A. L. Tietelbaum,* attorney, and *A. M. Chudnow* of counsel, both of Milwaukee, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, Herbert J. Steffes,* district attorney of Milwaukee county, and *Gene L. Green,* assistant district attorney, and oral argument by *Mr. Green.*

ROSENBERRY, C. J. The sole question raised in this case is whether the evidence sustains the finding of the trial court that the defendant was guilty of gross negligence within the meaning of that term as used in sec. 340.26, Stats. Sec. 340.26 is as follows:

"Every other killing of a human being by the act, procurement or gross negligence of another, where such killing is not justifiable or excusable, or is not declared in this chapter murder or manslaughter of some other degree, shall be deemed manslaughter in the fourth degree."

Prior to the enactment of ch. 483, Laws of 1929, this section read as follows:

"Every other killing of a human being by the act, procurement or culpable negligence of another, where such killing is not justifiable or excusable, or is not declared in this chapter murder or manslaughter of some other degree, shall be deemed manslaughter in the fourth degree."

This amendment was adopted subsequent to the decision of this court in *Clemens v. State* (1922), 176 Wis. 289, 313, 185 N. W. 209. In the *Clemens Case* culpable negligence was held to mean ordinary negligence as defined in this state. It was there pointed out that as a result of mere inadvertence

a person might in this state be convicted of the crime of manslaughter with the necessary serious consequences to himself and his family.   It was suggested that—

"at the earliest time available such changes be made in the statutes of our state by the legislature as will require, in order to convict of manslaughter in the fourth degree, gross negligence as defined in the decisions of this court."

Under the circumstances we must assume that the legislature, in adopting the amendment of 1929, used the term "gross negligence" in that sense.   The definition of gross negligence referred to in the *Clemens Case* is that found in *Jorgenson v. Chicago & N. W. R. Co.* (1913) 153 Wis. 108, 116, 140 N. W. 1088.   It is as follows:

"Gross negligence has received a very certain and definite meaning in the jurisprudence of this state, somewhat different from the meaning given to it in other states.   It is not inadvertence in any degree; there must be present either wilful intent to injure or that wanton and reckless disregard of the rights of others and the consequences of the act to himself as well as to others which the law deems equivalent to an intent to injure."

The first question presented then is whether the evidence sustains the finding of gross negligence.   In a consideration of this question, the court having found the defendant guilty, we shall refer to the facts tending most strongly to support the court's findings.

On the evening of February 19, 1939, at about 11:25 p. m., Robert Kermott, Alton Higgins, Fred Somer, and Roy Johnson were pushing a car operated by Kermott in a southerly direction on North Thirty-Fifth street between West Vliet and West McKinley streets.   It was proceeding at a speed of from two to four miles per hour in neutral gear, along a level roadway, fifty feet wide and within three or four feet of the westerly curb.   The lights on the car being pushed were on. The Kermott car was struck from the rear by the car then being driven by the defendant.   There was nothing to obstruct

the defendant's view. The lights on his car were on. Defendant's car struck the pushed car with such force that it was sent ahead about one hundred thirty feet, and Higgins was hit and thrown over the top of the Kermott car. It does not appear that any warning was given, that the brakes of the defendant's car were applied, or that any effort was made to avoid the accident. The defendant had stopped for a light about four hundred feet north of the place of collision. He was talking to a companion from the time they left the stop light. Neither the defendant nor any of his companions saw the pushed car or any of the persons engaged in pushing it. The first knowledge that the defendant had that a person was struck was when he saw the body of Higgins falling.

There is some evidence that earlier in the evening the defendant had drunk some beer, although it does not appear that the defendant was intoxicated. It appears from the records of the United States weather bureau that it was snowing at the time of the accident, although disinterested witnesses testified that at the time and place in question vision was not obscured, that it was light, and that there was no difficulty in seeing the pushed car from over a block away.

The trial court, in announcing his determination, made the following statement:

"Here is a man [the defendant] who drove within ten or fifteen feet of this car before he saw the car. He never saw the individuals. If that isn't gross carelessness in driving a car, I don't know what is. He was going forward and hit something in his path. He is supposed to see one hundred fifty feet ahead and drive his car so that he can stop within that distance. If he can only see fifty feet ahead he must drive his car so he can stop in that distance, and if he can only see fifteen feet ahead, he must drive so that he can stop within fourteen feet. A man who hits something right in front of him on the roadway, that he is supposed to see, particularly on his half of the road, we just can't overlook that."

Thirty-Fifth street is one of the main cross-town streets in the city of Milwaukee. The accident occurred on a bridge,

which was well lighted. In addition there was a filling station and other lights which illuminated the whole area. One hundred twenty-five feet or so north of the place of the accident the defendant was going at a speed of twenty to twenty-five miles an hour and engaged in shifting gears. It is apparent that he struck the pushed car with great force, and the indications are that he increased his speed without observing the traffic in front of him. His failure to make any observation during the time it took him to travel approximately four hundred feet indicates quite strongly that the defendant was negligent in a high degree. However, we find no evidence of wantonness or wilfulness. The defendant stopped for the light on Vliet street. He had shifted gears shortly before the accident. His conduct after the collision was that of one conscious of the character and seriousness of his negligent act. There was nothing of bravado or disregard of his duty in any other respect than that he failed to observe the conditions in front of him. Gross negligence, as defined in this state and as used in sec. 340.26, Stats., cannot rest on inadvertence. There must be something in the conduct of the actor that shows wantonness, recklessness, or wilfulness.

*By the Court.*—Judgment reversed, and cause remanded with directions to discharge the defendant.