WILL OF WILSON: WILSON and another, Appellants, v. HENDRIE and another, Respondents.

*September 12—October 7, 1958.*

For the appellants there was a brief and oral argument by *George J. Mangan* and *Walter A. John,* both of Milwaukee.

For the respondents there was a brief and oral argument by *R. Stanley Kelly* of Burlington.

CURRIE, J.    We are confronted on this appeal with what disposition should be made of the estate of the testatrix in

view of the fact that she was murdered by her husband who was bequeathed her entire estate.

James Barr Ames in his Lectures on Legal History, page 311, points out that there are three possible answers which the courts have given to this type of problem where the only contending parties are the murderer and the heirs of the deceased. These are:

"1. The legal title does not pass to the murderer as heir or devisee.

"2. The legal title passes to the murderer, and he may retain it in spite of his crime.

"3. The legal title passes to the murderer, but equity will treat him as a constructive trustee of the title because of the unconscionable mode of its acquisition, and compel him to convey it to the heirs of the deceased, exclusive of the murderer."

This court by its decisions in *Estate of Wilkins* (1927), 192 Wis. 111, 211 N. W. 652, 51 A. L. R. 1106, and *Estate of King* (1952), 261 Wis. 266, 52 N. W. (2d) 885, is firmly committed to the principle that a murderer will not be permitted to profit by his crime. The *Wilkins Case* involved a testamentary bequest to a murderer, while the *King Case* was concerned with the murder of one joint tenant by the other. The court held in the *Wilkins Case* that the legacy lapsed and passed under the residuary clause of the will. In reaching such result in the *Wilkins Case* the opinion adopted the first of the above three alternatives listed by Ames and rejected the third alternative, although the same result under the facts there presented would have been reached under either theory. However, under the facts of the instant case, where the rights of third-party alternative legatees are at issue, it is possible to have a different result depending on which of the two theories is adopted as the correct one.

Ames, in his Lectures on Legal History, page 312, after reviewing New York and Nebraska decisions which had adopted the first of the three listed alternatives, stated:

"It seems impossible to justify the reasoning of the court in these cases. In the case of the devise, if the legal title did not pass to the devisee, it must be because the testator's will was revoked by the crime of his grandson. But when the legislature has enacted that no will shall be revoked except in certain specified modes, by what right can the court declare a will revoked by some other mode? In the case of inheritance, surely, the court cannot lawfully say that the title does not descend, when the statute, the supreme law, says that it shall descend."

Prof. Austin W. Scott is generally recognized as one of the leading authorities on the law of trusts in this country. His pre-eminence in this field is attested by the fact that he was selected by the American Law Institute to act as Reporter for Restatement, Trusts. In 4 Scott, Trusts (2d ed.), p. 3180, sec. 492, this eminent authority states:

"In many of the cases it is not clear whether the murderer acquires the legal title to the property of the decedent and is chargeable as constructive trustee of the property, or whether he does not even take the legal title to the property but it passes directly to the heir or persons next in succession. In the absence of a statute otherwise providing, it would seem that the legal title to the property should pass to the murderer and that he is chargeable as constructive trustee. This would seem to be the case where the statute of wills and the statute of distributions are silent on the matter and there is no other statute with respect to it. Where the statute of wills and the statute of distributions make no provision as to the effect of murder of the decedent by the legatee or heir, the property passes under the will or by intestacy to him. It is then that the equitable principle as to unjust enrichment becomes applicable. That principle is as applicable where the title to property is acquired by murder as it is where the title is acquired by fraud, duress, or undue influence. By

imposing a constructive trust upon the murderer, the court is not making an exception to the provisions of the statutes, but is merely compelling the murderer to surrender the profits of his crime and thus preventing his unjust enrichment."

Restatement, Restitution, p. 763, sec. 187, adopts the constructive-trust theory advocated by both Ames and Scott.

In the recent case of *Bradley v. Fox* (1955), 7 Ill. (2d) 106, 117, 129 N. E. (2d) 699, the court applied the constructive-trust theory to a case, where one joint tenant murdered the other. In its opinion the court stated that such theory has approbation "in the case law, the Restatement of Restitution, and in legal treatises, . . ."

In the opinion of this court in the *Wilkins Case,* the constructive-trust theory was rejected on the following ground (192 Wis. at p. 117):

"It is our view, however, that the act of vesting and that of taking are simultaneous; that there can be no vesting without a taking, even if that taking be only for the short period of a second; that if there be a vesting, even for the shortest unit of time, there is visited upon the criminal a punishment in addition to that provided for by law. In other words, it amounts to an attainder or a corruption of blood, prohibited by the constitution."

It must now be acknowledged that the court was in error in assuming that an unconstitutional attainder or corruption of blood would result if the constructive-trust theory were to be invoked. 4 Scott, Trusts (2d ed.), p. 3181, sec. 492, conclusively demonstrates the fallacy of the court's reasoning in the *Wilkins Case:*

"In some of the cases in which the courts have permitted the murderer to take and keep the property, they have said that to deprive him of it would be to impose an additional punishment upon him for his crime. Indeed, it has been suggested that in effect the result would be to impose a forfeiture for crime in violation of provisions of the federal

constitution and the various state constitutions. In making such statements, however, the fact is overlooked that the murderer is not deprived of any property which he obtained in other ways than through the murder; he is merely prevented from enriching himself by acquiring property through the murder. In many states by statute it is provided that the murderer shall not inherit property from his victim. These statutes would be unconstitutional if they imposed a forfeiture of property as a penalty for the murder. The statutes, however, have uniformly been upheld, since they merely prevent the murderer from profiting by his act."

Our review of the foregoing authorities convinces us that the constructive-trust theory is preferable to the one adopted in the *Wilkins Case* because it is based on sounder logic, and affords a court of equity greater flexibility in arriving at a just result which does not defeat the intent of the deceased. In the instant case the imposition of a constructive trust upon the taking by the murderer will as fully deprive him of all benefit of the bequest as would a determination of intestacy. On the other hand, to hold that testatrix died intestate would do violence to sec. 238.14, Stats., that specifically limits the manner in which a will may be revoked.

Where the constructive-trust theory is applied and the heirs of the murdered person are designated as the cestuis they do not take because of intestacy but because equity determines that they are the persons most equitably entitled thereto. 9 Illinois Law Review, 505, 508. However, the heirs of the murdered person are not always determined to be the cestuis of the constructive trust. 4 Scott, Trusts (2d ed.), p. 3199, sec. 492.6, supposes a case where a legatee murders a testator who is about to execute a will substituting another legatee. In such a case the author states that the intended legatee would take as cestui of the constructive trust. The New York court of appeals reached this result where the testator was about to execute a new will substituting a different legatee but was prevented by fraud and duress from so doing by the first-named legatee. *Latham v. Father*

*Divine* (1949), 299 N. Y. 22, 599, 85 N. E. (2d) 168, 86 N. E. (2d) 114, 11 A. L. R. (2d) 802.

In the instant case the particular problem to be resolved is whether the heirs of the deceased or the named alternate legatees should be determined to be the cestuis of the constructive trust. There seems to be a dearth of authority as to this.

The case of *Matter of Byers* (1955), 208 Misc. 916, 144 N. Y. Supp. (2d) 68, was decided by a New York surrogate's court, which is a trial and not an appellate court. There the testatrix was murdered by her husband. Her will bequeathed her estate to her husband, if he survived her, and, in the event he predeceased her, two sisters of the deceased were to take as alternate legatees. The court, in an extremely short opinion, held that the estate was to be distributed as if the deceased died intestate and that the alternate legatees did not take. Prof. Scott's comment on this result is as follows (1958 Suppl., p. 38, to 4 Scott, Trusts (2d ed.), p. 3184, sec. 492) :

"It would seem, however, that it might well have been held that the sisters were entitled, since the testatrix presumably intended that they should take if the husband did not take."

A note in 30 Harvard Law Review, 622, 625, also advocates that the named alternate legatees, under a will worded as in the instant case and in the case of *Matter of Byers, supra,* should be determined to be the cestuis of the constructive trust rather than the heirs.

There are several reported cases in the life insurance field dealing with the situation of whether alternate beneficiaries, or the estate of the deceased, take the proceeds where the insured is murdered by the primary beneficiary, and there is great conflict in the conclusions reached.

The life insurance cases of *Beck v. Downey* (9th Cir. 1951), 191 Fed. (2d) 150, *Beck v. West Coast Life Ins.*

*Co.* (1952), 38 Cal. (2d) 643, 241 Pac. (2d) 544, 26 A. L. R. (2d) 979, and *Beck v. Downey* (9th Cir. 1952), 198 Fed. (2d) 626, all concern the same murder of a wife by her husband. The two federal cases dealt with a policy of life insurance taken out by the deceased on her life in which the murderer husband was the primary beneficiary, and his mother the alternate beneficiary. Diversity of citizenship was the reason for federal court jurisdiction. The case in the state court related to another policy of life insurance taken out by the same insured naming the husband as primary beneficiary and one Jettie Knoll, a friend of the insured wife, as alternate beneficiary. The case in 191 Fed. (2d) was decided first, and the court of appeals held that the mother of the husband could not take as alternate beneficiary because the condition for her taking had not occurred, viz., the prior death of the primary beneficiary. The theory of constructive trust is not discussed in the opinion.

With this federal court decision before it, the supreme court of California refused to follow it when the appeal in *Beck v. West Coast Life Ins. Co.* reached it the following year, and determined that the alternate beneficiary, Jettie Knoll, was entitled to the proceeds. The rationale of the decision is as follows (38 Cal. (2d) at p. 647, 241 Pac. (2d) at p. 547):

"Although her expressed intent that her husband receive the proceeds cannot be given effect, the policy names the one she wished to take if her husband could not. It stated that the proceeds should be paid to the alternative beneficiary, if the primary beneficiary predeceased the insured. Thus, in the type of disability that would naturally be anticipated by the insured, the alternative beneficiary was preferred over the estate of the insured. In this case there occurred the only other possible contingency in which the primary beneficiary would be under a disability equivalent to actual death. The insured has clearly indicated her intent that any interest her estate might have in the proceeds of the policy should be subordinate to the interest of the alternative beneficiary. This

intent is recognized by a holding that the alternative beneficiary may recover the proceeds. A holding that the estate of the insured is entitled to the proceeds would not only defeat this intent, but would also enable the murderer to deprive the alternative beneficiary of her opportunity to take in preference to the estate by foreclosing the possibility that the murderer might predecease the insured. The rule that prevents his profiting by his own wrong should not be invoked in such a way as to prejudice the rights of the alternative beneficiary."

The defeated alternate beneficiary in *Beck v. Downey* (9th Cir. 1951), 191 Fed. (2d) 150, in the meantime applied for certiorari to the United States supreme court, which was granted and the case remanded "for further consideration in the light of *Beck v. West Coast Life Ins. Co.*" *Downey v. Beck* (1952), 343 U. S. 912, 72 Sup. Ct. 646, 96 L. Ed. 1328. Upon remand the court of appeals adhered to its original decision on the ground that California law did not control because the policy was "neither made, executed, delivered, nor to be performed in California." *Beck v. Downey* (9th Cir. (1952), 198 Fed. (2d) 626, 628. Judge FEE, one of the judges participating, wrote a concurring opinion in which he stated:

"If judicial policy dictates that he [the murderer] cannot take directly, no technical consistency should permit him to benefit indirectly by a gift to his family, especially a mother, from whom he would normally acquire property by the statutes of descent and distribution. The policy is pronounced that neither he nor any who takes through him or for his benefit should be recognized."

In the later case of *Baekgaard v. Carreiro* (9th Cir. 1956), 237 Fed. (2d) 459, 465, the same federal court of appeals, but with a different panel of judges sitting, stated:

"The fact that in *Beck v. Downey,* the alternative beneficiary was the mother of the murderer may have greatly influenced the decision of this court. This is evident as shown

by the concurring opinion of Judge FEE in the case, 198 Fed. (2d) 626."

Further cases in which the alternate or contingent beneficiary of a life insurance policy has been permitted to take the proceeds, where the insured was murdered by the primary beneficiary, are *Carter v. Carter* (Fla. 1956), 88 So. (2d) 153, and *Neff v. Massachusetts Mut. Life Ins. Co.* (1951), 43 Ohio Op. 401, 96 N. E. (2d) 53. A case holding contra is *Bullock v. Expressmen's Mut. Life Ins. Co.* (1951), 234 N. C. 254, 67 S. E. (2d) 71. The problem is discussed in a note in 30 North Carolina Law Review, 175, in which the result in the *Bullock Case* is criticized. The author on the authority of Restatement, Restitution, p. 775, sec. 189, and 3 Scott, Trusts (1939 ed.), p. 2405, sec. 494.1, suggests that a constructive trust should be held to be imposed upon the murderer primary beneficiary for the benefit of the alternate beneficiary thereby carrying out the obvious intent of the insured.

We consider that, in the case where a will bequeaths the residue of an estate to a legatee who has murdered the testator and an alternate legatee not related to the murderer is named to take in the event the primary legatee predeceases the testator, a constructive trust should be imposed under which the alternate beneficiary would take the bequeathed residue as the cestui of such trust. This is because such disposition is more in keeping with the expressed intent of the testator than would be a disposition which handed the estate over to the heirs of the deceased.

The situation in the instant case is complicated by the fact that the named alternate legatees are the adult children of the murderer husband by a prior marriage. Mr. and Mrs. Wilson were married in December, 1953, after a very short courtship, and the will of testatrix was executed approximately a month after the marriage. On the record before us it does not appear how long she had known the alternate

legatees or whether she had any particular attachment for them. The lawyer scrivener of the will testified to a conversation with the deceased in which she expressed antipathy against her two sisters.

In determining who should be held to be the cestuis of the constructive trust, the question to be resolved is how the wishes of the testatrix would best be carried out under the fact situation which has resulted from the murder. To properly decide such issue in our opinion will require the taking of further testimony by the trial court.

*By the Court.*—Judgment reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

MARTIN, C. J., took no part.
BROADFOOT and BROWN, JJ., dissent.