Lorraine KRUEGER, Personal Representative of the Estate of Janice Rodenberg, Plaintiff-Respondent-Cross Appellant,

v.

Merlin J. RODENBERG, Defendant-Appellant-Cross Respondent.

Court of Appeals

*No. 93–2677. Submitted on briefs August 11, 1994.—Decided December 22, 1994.*

(Also reported in 527 N.W.2d 381.)

369

For the plaintiff-respondent-cross appellant the cause was submitted on the briefs of *Darrel A. Talcott* of West Salem.

For the defendant-appellant-cross respondent the cause was submitted on the briefs of *Barbara S. Hughes* of *Stolper, Koritzinsky, Brewster & Neider, S.C.* of Madison and *Zel S. Rice II* of *Rice & Abbott* of Sparta.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.    Lorraine Krueger, personal representative of the estate of Janice Rodenberg, brought this action to declare certain real estate titled in the name of Janice's surviving husband, Merlin, to be marital property or, in the alternative, to impose a constructive trust on the real estate or the proceeds therefrom in favor of the estate. The trial court ruled that the real estate was not marital property but, on the basis of the "equities" of the case, imposed a constructive trust on the property in the estate's favor. Judgment was entered accordingly, and the trial court denied Merlin's motion for reconsideration.

Merlin appeals, and Krueger cross-appeals, from the judgment and from the order denying reconsideration. The issues are: (1) whether the real estate acquired by Merlin was "mixed" with marital property so as to be "reclassified" as property of the marriage under the terms of the Wisconsin Marital Property Act, ch. 766, STATS.; and (2) if not, whether a constructive trust may legally be imposed on the real estate on the undisputed facts of the case.

We agree with the trial court that Merlin's real estate was not mixed with the couple's marital property. We conclude, however, that because the well-

recognized requirements for imposing a constructive trust were not met in this case, the trial court erred in its ruling on that issue.

We therefore reverse the judgment and order, noting that although such a result is plainly required by the law, it is one that does not necessarily comport with general considerations of fairness and equity, for Merlin murdered Janice.

Merlin and Janice Rodenberg were married in 1963. Neither party brought substantial assets to the marriage, and in 1966 or 1967 they purchased a tavern. In 1970, Merlin purchased a parcel of unimproved land with funds obtained, in part, from the parties' business and held in a bank account in Merlin's name. In 1982, he purchased another parcel of land, again using funds derived in part from the business and held in an account in his name. Both parcels were titled in Merlin's name alone.[1] In 1991, the year of Janice's death, one of the parcels was valued at $24,200, and the other

---

[1] Property acquired, as Merlin's was, during the marriage and prior to passage of the Wisconsin Marital Property Act is, for reasons not really relevant here, generally called "predetermination date property." *See* 1 KEITH A. CHRISTIANSEN ET AL., MARITAL PROPERTY LAW IN WISCONSIN § 2.70, at 2-87-88 (2d ed. 1986). And while predetermination date property is not "individual property," the Act treats it "as if it were individual property" during the marriage. Section 766.31(9), STATS.

Additionally, § 766.31(8), STATS., states that, in general, passage of the Act "does not alter the . . . ownership rights of property acquired before [the effective date of the Act]." As a result, the real estate at issue here would continue to be treated during the marriage as if it were Merlin's individual property unless it was "mixed" with marital property as defined elsewhere in the Act. As indicated, we discuss the "mixing" issue in some detail later in this opinion.

was sold by Merlin shortly after Janice's death for $17,000.

Krueger commenced this action seeking a declaration that the real estate was marital property under the "mixing" statute, § 766.63(1), STATS.,[2] because, after the effective date of the Act (January 1, 1986), annual real estate taxes on the property had been paid from joint funds. She also sought the imposition of a constructive trust on one-half of the value of the two properties, claiming that that is what Janice would have been entitled to receive had she lived to survive Merlin.

The trial court, noting that the tax payments simply "maintained" the real estate and did not enhance its value in any way, rejected Krueger's "mixing" argument. Then, emphasizing the equitable nature of constructive trusts, the court held that Janice had a right to claim a share in the property, which she was precluded from asserting because of her death. The court stated: "Mr. R[ ]odenberg's conduct extinguished the right of Mrs. R[ ]odenberg to exercise that right. Clearly the conduct of the Defendant that deprived Mrs. R[ ]odenberg not only of her life but of her prop-

[2] Section 766.63(1), STATS., provides, in pertinent part, that "mixing marital property with property other than marital property reclassifies the other property to marital property unless the component of the mixed property which is not marital property can be traced."

Section 766.63(2), STATS., provides that nonmarital property may also be transformed into marital property in certain instances where one spouse has contributed substantial effort, skill or managerial activity to the asset, substantially increasing its value, without reasonable compensation. Krueger does not attempt to justify reclassification of the property under this subsection.

erty rights, is unconscionable conduct." The trial court saw imposition of a constructive trust as being "strongly supported" by "equity [and] good consci[ence]," and ruled accordingly.

As indicated, we are satisfied that the trial court correctly decided the "mixing" issue under applicable provisions of the Act. As for the court's imposition of a constructive trust on Merlin's property, we must note our concurrence in the trial judge's observations concerning the unconscionable nature of Merlin's conduct in intentionally taking his wife's life and the considerations of equity and sympathy that motivated the judge's decision in the case. We share the court's views in this regard. Unfortunately, however, when we consider the plainly stated requirements the supreme court has established for imposition of constructive trusts, the conclusion is inescapable that those requirements have not been met under the facts of the case.

## I. "Mixing"

The issue presented is a narrow one: whether the fact that real estate taxes assessed on the property were paid from joint funds in the years following passage of the Act constitutes a "mixing" of nonmarital and marital property within the meaning of § 766.63(1), STATS., resulting in the reclassification of the real estate to marital property.

Krueger, who has the burden of establishing that a mixing occurred, *In re Estate of Kobylski v. Hellstern*, 178 Wis. 2d 158, 173, 503 N.W.2d 369, 374 (Ct. App. 1993), argues that the estate need not show that the payment of real estate taxes "enhanced" the value of the property in any way in order for mixing to occur as a result of the tax payments. She maintains that it is

enough that the property "would have been lost . . . by tax sale" had the payments not been made. She offers no legal authority for the proposition, however.

Merlin, on the other hand, argues that our decision in *Kobylski* compels affirmance of the trial court's ruling that no mixing occurred. In that case, the home in which the couple resided had been owned by the wife prior to the marriage. During the marriage, the couple paid real estate taxes, utility bills and "other household expenses" out of their joint funds. They also used joint funds to pay for several thousand dollars' worth of improvements to the home. *Kobylski*, 178 Wis. 2d at 166, 503 N.W.2d at 371. Ignoring the tax and utility payments, we upheld the trial court's determination that a "mixing" had occurred solely on the evidence that joint funds had been used to make permanent improvements to the home. We concluded: "By this . . . evidence [the husband] established that his and [his wife's] marital property was mixed with [his wife]'s nonmarital property. Thus, [the husband] met his burden to establish mixing under the statute." *Id.* at 175, 503 N.W.2d at 375.

Because "the component of the mixed property which [was] not marital property" could be traced, however, the wife's property could not be reclassified as marital property under § 766.63(1), STATS. *Kobylski*, 178 Wis. 2d at 175-76, 503 N.W.2d at 375. As noted, § 766.63(1) states that where the nonmarital property "can be traced," mixing has not occurred. We did not consider our inquiry ended by that fact, however, and we went on to consider if remedies other than reclassification might be available to the husband. We eventually concluded that he had a right to be reimbursed for the improvements to the real estate, and we

374

measured that reimbursement by "the enhancement in value to the property," stating the rule as follows:

> Where marital funds are used to improve the separate property of one of the spouses, a claim for reimbursement exists in favor of the marital estate measured by the property's enhanced value attributable to the improvements, not the amount of marital funds actually expended. *Thus, expenditures that relate merely to the maintenance of the property or which do not enhance the property's value are not to be considered.*

*Kobylski*, 178 Wis. 2d at 180, 503 N.W.2d at 377 (emphasis added) (footnote omitted).

*Kobylski*, as Krueger suggests, is distinguishable, at least to some degree, from the instant case in that the just-quoted statements were made in the context of determining whether, and in what amount, the marital estate was to be reimbursed for joint-fund expenditures for improvements to nonmarital property when, even though mixing had been established, reclassification of the property was not warranted under the Act. Here, of course, we are considering whether the payment of taxes is enough, in the first instance, to establish mixing.

We think the case is instructive on the issue before us, however. First, as part of the step-by-step Wisconsin Marital Property Act analysis in *Kobylski*, we began by considering whether a mixing of marital and nonmarital property had occurred, and we held that it had—wholly ignoring the tax and utility expenditures and basing our holding solely on the evidence of the value-enhancing improvements made to the property. *Kobylski*, 178 Wis. 2d at 175, 503 N.W.2d at 375. Second, while we discussed "enhanced value" later in the

opinion in a slightly different context, we did limit the reimbursement to the marital estate to the enhanced value of the property attributable to the improvements. We did not allow any credit for payments that related merely to the "maintenance" of the property. *Id.* at 180, 503 N.W.2d at 377.[3] The result was, of course, that we declined to allow the husband's interest in the property to be *increased* by "maintenance" payments, limiting his interest to only such expenditures as increased the property's value. And it would make little sense in this case to rule, as Krueger urges, that a marital property interest can be *created* by the mere payment of taxes or other maintenance expenses.[4] The trial court correctly rejected Krueger's "mixing" claim.

---

[3] Although we did *not* explicitly state that "property taxes, utilities, insurance and other household expenses" were mere "maintenance" of the property, we notably excluded such payments from the "improvements" made to the residence. *In re Estate of Kobylski v. Hellstern*, 178 Wis. 2d 158, 166, 175, 503 N.W.2d 369, 371, 375 (Ct. App. 1993).

[4] Our conclusion is consistent with decisions in at least two "community property" states—California and New Mexico. In *Moore v. Moore*, 618 P.2d 208, 211 (Cal. 1980), the California Supreme Court held that the payment of taxes, interest and insurance does not increase the community property interest in a home, because "such expenditures do not increase the equity value of the property" and "do not contribute to the capital investment and are not considered part of it." *Chance v. Kitchell*, 659 P.2d 895 (N.M. 1983), reaches the same result.

It is true, as Krueger suggests, that in both *Moore* and *Chance*, as in *Kobylski*, the property was acquired by one spouse prior to the marriage, whereas Merlin purchased the two parcels during the marriage—albeit prior to passage of the Wisconsin Marital Property Act. She argues that because the property would have been marital property if Merlin had purchased it *after* the effective date of the Act, we should reject

## II.   Constructive Trust

■
The Wisconsin Supreme Court has held that a constructive trust—an equitable device created by the law to prevent unjust enrichment—may be imposed only in the "limited circumstances" when the following two requirements are met: (1) title to the property "must be held by someone who in equity and good conscience should not be entitled to [its] beneficial enjoyment"; and (2) that person's title "*must . . . have been obtained* by means of . . . fraud, duress, . . . commission of a wrong, or by any form of unconscionable conduct." *Wilharms v. Wilharms*, 93 Wis. 2d 671, 679, 287 N.W.2d 779, 783 (1980) (emphasis added).

■
We agree with the trial court that constructive trusts, being equitable in nature, may " 'be used in a variety of situations, . . . sometimes to develop a new field of equitable interposition . . . .' " *Estate of Massouras*, 16 Wis. 2d 304, 312-13, 114 N.W.2d 449, 453 (1962) (quoting Roscoe Pound, *The Progress of the Law, Equity*, 33 HARV. L. REV. 420, 421 (1920)). We also

---

both the express holdings and the reasoning of these cases. She does not elaborate upon the argument, other than to state that the mixing provisions of the Act would be "better served" by a construction that would "treat[ ] the payment of real estate taxes . . . as a mixing under [§ ] 766.63(1), [STATS.] . . . ."

The fact is, however, that even though the Act does not recognize assets such as those at issue in this case as individual property (as if it had been acquired prior to the marriage, or by gift or inheritance), but instead describes them as "predetermination date property," such property is treated under the Act "as if it were individual property" during marriage, § 766.31(9), STATS., and thus Janice had no interest in the assets during the marriage.

agree that there are no strict limits to the remedies that may be formulated and granted by courts of equity. But the question here is not whether, once the legal requirements for relief have been established, the remedy fashioned by the court is one that may be granted under its broadly defined equitable powers. Rather, the question is whether there is a legal basis for granting that remedy in the first place. And while we cannot dispute that Merlin may be considered one who in "equity and good conscience" should not be entitled to full enjoyment of the property, the second requirement for establishing a constructive trust—that the property must have been "*obtained*" by some form of wrongful conduct—is concededly absent in this case.

Because part of the purchase prices paid for the two parcels came from funds derived from the parties' business, the trial court believed that, had Janice survived Merlin, she would have been entitled to claim a one-half interest in the real estate as "deferred marital property" under the Act.[5] As a result, the trial court concluded that Janice had been "deprived of [her right in the property] merely because of [Merlin's] wrongful act" and ruled that equity demanded that a construc-

---

[5] Property acquired during the marriage to which the Act does not apply, but which would have been covered by the Act had the property been acquired after its enactment, is characterized as "deferred marital property." Section 851.055, STATS. With respect to such property, a surviving spouse may, in some circumstances, elect to receive a one-half interest in the deferred marital property. Section 861.02, STATS.

The trial court also believed that, had Janice lived and the parties eventually divorced, she would have been able to claim a one-half interest in the property.

tive trust be imposed on the one-half interest in the property to which it felt Janice's estate was entitled.

As we have said, we agree with the trial court that the stipulated facts unquestionably show unconscionable and outrageous conduct on Merlin's part. But that conduct occurred long after he had acquired the property in question. The record does not show any fraudulent or unconscionable conduct in connection with his *acquisition* of the two properties, and the trial court did not so find. As the above discussion indicates, that is one of the two prerequisites imposed by the supreme court for the establishment of constructive trusts: title to the property "*must . . . have been obtained* by means of . . . fraud . . . or . . . unconscionable conduct." *Wilharms*, 93 Wis. 2d at 679, 287 N.W.2d at 783 (emphasis added).

There is, of course, a strong public policy that prevents persons from benefiting from their wrongful acts. In support of that policy, the Restatement of Restitution recognizes the rule that one who acquires title to property by murder takes the property subject to a constructive trust for the benefit of those persons who would have been entitled to the property upon the natural death of the decedent. RESTATEMENT OF RESTITUTION § 187(1) (1937). The rule distinguishes, however, between property acquired by the murderer *as a consequence* of the wrongful act and property lawfully acquired by him or her *prior* to the act.

> Although the murderer is not permitted to keep property which he acquires by the murder, *he will not be deprived of property which he does not acquire through the murder*. It is this distinction which underlies the rules stated in this Section and the following Sections.

379

. . . .

. . . Under the rules stated in this Section, the murderer is not deprived of property lawfully acquired by him, but is merely prevented from acquiring the beneficial interest in property through his unlawful act.

RESTATEMENT OF RESTITUTION 187 cmts. a and c (emphasis added). The rule has been adopted in Wisconsin. *See Will of Wilson*, 5 Wis. 2d 178, 182-83, 92 N.W.2d 282, 284-85 (1958). Because there is no indication in the record that Merlin wrongfully obtained title to the property, we see no basis for a constructive trust.[6]

Krueger suggests that imposition of a constructive trust is justified because Merlin's wrongful act stripped Janice of her right to claim an interest in the property

---

[6] The dissent begins with the well-known admonition from *Will of Wilson—a case in which the husband stood to gain his wife's entire estate as a result of killing her*—that "a murderer will not be permitted to profit by his crime." *Will of Wilson*, 5 Wis. 2d 178, 180, 92 N.W.2d 282, 284 (1958). We could not agree more with that rule. We neither "change that rule," as the dissent charges, nor do we abrogate or weaken it. As we indicate above, the property in question in this case was not acquired by Merlin as a consequence of his wrongful act. We note, too, that *Wilson* is the case adopting the rule of § 187 of the Restatement—the rule the dissent says is "inapposite" to the issues before us.

We also agree with the dissent that the result in this case is undesirable on many fronts. The dissent, looking almost exclusively to the reprehensible nature of Merlin's act, fashions a result far more palatable than the one reached here. It is a result we, too, would reach if we did not feel constrained by applicable principles of law—principles which, however unfortunately, we may not change or bend to achieve a more "desirable" result.

and improperly enlarged his own interest in it. Again, we disagree. The rule is that "[w]here two persons *have an interest in property* and the interest of one of them is enlarged by his murder of the other, to the extent to which it is enlarged he holds it upon a constructive trust for the estate of the other." RESTATEMENT OF RESTI-TUTION § 188 (1937) (emphasis added). As we have noted, the property in question, being predetermina-tion date property, is treated by the Wisconsin Marital Property Act as if it were Merlin's individual property during the marriage. As a result, Janice would have no interest in it and her death could not add to or enlarge Merlin's interest.[7]

Under the circumstances of this case, we conclude that the plain requirements for imposing a construc-tive trust were not met, and, as we have indicated above, the trial court correctly ruled that the property in question was not, and did not become, marital prop-erty under ch. 766, STATS.

*By the Court.*—Judgment and order reversed.

SUNDBY, J. (*dissenting*). It is the rule in Wiscon-sin that "a murderer will not be permitted to profit by his crime." *Will of Wilson*, 5 Wis. 2d 178, 180, 92 N.W.2d 282, 283-84 (1958). I consider that rule immu-table. I therefore dissent.

After twenty-seven years of marriage, Merlin Rodenberg murdered his wife, Janice. Her heirs seek to

---

[7] Indeed, because predetermination date property is treated as if it were individual property during the marriage, Merlin could have gifted away the property during marriage. *See* 1 KEITH A. CHRISTIANSEN ET AL., MARITAL PROPERTY LAW IN WISCON-SIN 2.72a, at 2-90 (2d ed. 1986) (discussing §§ 766.31(9) and 766.53, STATS.).

impose a constructive trust upon property acquired during the marriage with marital funds but titled in Merlin's name. In Wisconsin,

> marriage is a partnership or a shared enterprise in which each of the spouses makes a different but equally important contribution to the family and its welfare and to the acquisition of its property. Because each spouse contributes equally to the prosperity of the marriage by his or her efforts, each spouse has an equal right to the ownership of the property upon a divorce.

*Wierman v. Wierman*, 130 Wis. 2d 425, 439, 387 N.W.2d 744, 750 (1986). I conclude that a court exercising equitable powers may enforce that equal right when the marriage is terminated by one spouse's murder of the other, as well as upon divorce.

The facts were stipulated. Merlin and Janice were married in 1963. At that time, Merlin had cash funds not exceeding $1,000 and limited assets. They purchased the Four Corners Restaurant and Tavern in 1966 or 1967. Both parties devoted their full-time efforts to the business after 1968. Three parcels of real estate were purchased during the marriage, one in 1970, one in 1974 and the last in 1982. Although title to the properties purchased in 1970 and 1982 was taken in Merlin's name, the funds used to purchase those properties came from business accounts or accounts funded from the business. All business and personal accounts were maintained in Merlin's name until he became ill in 1985, when they were changed to joint accounts. All real estate taxes on the property in question were paid from accounts maintained in Merlin's name prior to August 1985. Plainly, in this marriage the husband and wife were one, and the husband was the one.

The authorities relied on by the majority are inapposite. The majority relies on RESTATEMENT OF RESTITUTION § 187 cmts. a and c (1937). However, § 187 applies only to the *acquisition* of property by murder. More in point is § 188 which states: "Where two persons have an interest in property and the interest of one of them is enlarged by his murder of the other, to the extent to which it is enlarged he holds it upon a constructive trust for the estate of the other." Comment (a) states: "The rule stated in this Section is based upon the principle that although the murderer will not be deprived of property to which he would otherwise be entitled, he will not be entitled to profit by the murder . . . ."

While Janice may not have had a *legal* interest in the properties, she had an interest which equity would protect. In view of her contribution to the purchase of these properties, equity would have prevented Merlin from disposing of the property during the marriage to the exclusion of Janice's interest. He cannot accomplish that result by murdering her.

The majority constrains a court's exercise of its equitable powers with inelastic chains. However, "[t]hough no precedent may be at hand in a given situation, since principles of equity are so broad that the wrong involved [or the right to be enforced] need not go without a remedy, its doors will swing open for the asking, and a new precedent be made." *Meyer v. Reif*, 217 Wis. 11, 20, 258 N.W. 391, 394 (1935) (alteration in original) (quoting *Harrigan v. Gilchrist*, 121 Wis. 127, 236, 99 N.W. 909, 936 (1904)).

The Wisconsin Supreme Court has held that an unmarried cohabitant may assert contract and property claims against the other party to the cohabitation on a number of equitable grounds: breach of an implied

contract, constructive trust, *quantum meruit*, and unjust enrichment. *Watts v. Watts*, 137 Wis. 2d 506, 511-12, 405 N.W.2d 303, 306 (1987). The court said: "Many courts have held, and we now so hold, that unmarried cohabitants may raise claims based upon unjust enrichment following the termination of their relationships where one of the parties attempts to retain an unreasonable amount of the property acquired through the efforts of both." *Id.* at 532-33, 405 N.W.2d at 314. By our decision today we give more rights to an unmarried cohabitant than to a married cohabitant. Of course, a married cohabitant's right to fifty percent of the marital estate is protected by our divorce laws. However, a spouse should not have to divorce in order to enforce the spouse's interest in the property acquired during the marriage through the joint efforts of the husband and wife. Further, a married cohabitant should not be able to frustrate our property division laws by murdering his or her spouse.

The estate asks that a constructive trust be imposed on assets acquired during the marriage. "A constructive trust is an equitable device created by law to prevent unjust enrichment." *Id.* at 533, 405 N.W.2d at 315 (citing *Wilharms v. Wilharms*, 93 Wis. 2d 671, 678, 287 N.W.2d 779, 783 (1980)). "To state a claim on the theory of constructive trust the complaint must state facts sufficient to show (1) unjust enrichment and (2) abuse of a confidential relationship or some other form of unconscionable conduct." *Id.* at 533-34, 405 N.W.2d at 315. Plainly, the elements of unjust enrichment are present in this case: (1) Janice conferred a benefit on Merlin, (2) he knew of that benefit, and (3) it is inequitable for him to retain that benefit. *See id.* at 531, 405 N.W.2d at 313.

Merlin will be enriched in this case because he has eliminated by murder a person who held more than the mere expectation of a property interest; Janice had an interest which equity would recognize during her life. The trial court correctly caused the gates of equity to swing open. Janice and her heirs have a place within those gates.