IN RE the ESTATE OF Diane L. HACKL, Deceased:

Bradley A. HACKL, Appellant,†

v.

Cody HACKL, by his Guardian ad Litem, Jennifer Weston, and Olivia and LaDina Johnson, by their Guardian ad Litem, Bruce Freeberg, Respondents.††

Court of Appeals

*No. 99–0499. Submitted on briefs July 9, 1999.—Decided October 7, 1999.*

(Also reported in 604 N.W.2d 579.)

†Petition to review denied.
††Petition to cross-review denied.

On behalf of the appellant, the cause was submitted on the briefs of *Michael D. Rumpf* of *Rumpf Law Offices*, Cambridge.

On behalf of the respondent, the cause was submitted on the brief of *Gerard F. Kuchler* of *Kuchler Law Offices*, Waukesha.

Before Eich, Vergeront and Deininger, JJ.

¶ 1. DEININGER, J. Bradley Hackl, who murdered his wife, Diane, appeals an order imposing a constructive trust on an undivided one-half interest in

his pension. The circuit court imposed the constructive trust after concluding that the pension account had constituted marital property prior to Diane's death, and that, because Bradley murdered her, Diane's interest in the pension "survives her death." Bradley claims the circuit court erred by failing to follow §§ 766.31(3) and 766.62(5), STATS., which, according to Bradley, establish that Diane's interest in his pension terminated at her death.[1] We conclude, however, that the trial court's order is consistent with the equitable principle, long applied in Wisconsin, that a murderer should not be allowed to benefit from his or her crime. Accordingly, we affirm.

## BACKGROUND

¶ 2. Bradley and Diane Hackl were married in 1988. In 1996, as the two were divorcing, Bradley murdered Diane. Bradley was convicted of the crime and sentenced to prison for life. Bradley had worked as a union mason for almost forty years and had contributed to a pension fund since 1957. From prison, Bradley applied for and began to receive monthly pension benefits.

¶ 3. In probate proceedings regarding Diane's estate, her personal representative asserted that the pension was marital property and claimed an undivided one-half interest in the pension as an estate asset. Bradley objected, arguing that Diane's marital property interest in his pension terminated upon her death, and that the pension must thus be classified as

---

[1] Sections 766.31(3) and 766.62(5), STATS., are quoted and discussed in the text of this opinion. Generally, these statutes provide that a nonemployee spouse's interest in his or her spouse's "deferred employment benefit plan" terminates upon the nonemployee spouse's death.

wholly his individual property. The circuit court concluded that Diane's interest in Bradley's pension survived her death and ordered that a constructive trust be imposed on an undivided one-half of it. Bradley appeals the order.[2]

## ANALYSIS

¶ 4. Bradley argues that the "terminable interest rule," set forth in §§ 766.31(3) and 766.62(5), STATS., conclusively establishes that any interest Diane may have held in his pension terminated at her death. Section 766.31(3), STATS., provides that "the marital property interest of [a] nonemploye spouse in a deferred employment benefit plan . . . terminates at the death of the nonemploye spouse if he or she predeceases the employe spouse." Section 766.62(5), STATS., reiterates this provision: "If the nonemploye spouse predeceases the employe spouse, the marital property interest of the nonemploye spouse in all of the following terminates at the death of the nonemploye spouse: (a) A deferred employment benefit plan. . . ." (Diane's children do not dispute that Bradley's pension falls within the statutory definition of "deferred employment benefit plan." See § 766.01(4)(a), STATS.)

¶ 5. The issue before us is whether these statutes unequivocally bar Diane's estate from claiming any interest in Bradley's pension. It is thus a question of law, which this court reviews de novo. See Stockbridge Sch. Dist. v. Department of Pub. Instruction Sch. Dist. Boundary Appeal Bd., 202 Wis. 2d 214, 219, 550

---

[2] The circuit court found that Diane died intestate, and it appointed her brother personal representative of her estate. The respondents in this appeal are Diane's three children, who are apparently her heirs. See § 852.01(1)(b), (2m), STATS., 1993–94.

46

N.W.2d 96, 98 (1996). Our chief objective in interpreting how a statute should be applied to a specific set of facts is to discern the intent of the legislature. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559 N.W.2d 563, 566 (1997). Customarily, we look first to the language of the statute, and if its meaning and application are plain, we look no further. *See Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519, 522 (1996). If the statute is ambiguous, however, we turn to extrinsic aids such as its legislative history, scope, context and the purpose of the statute to determine legislative intent. *See id.*

█

¶ 6. The application of the terminable interest rule set forth in §§ 766.31(3) and 766.62(5), STATS., to the present circumstance is an issue of first impression, but our customary approach to statutory interpretation will not assist us in resolving it. The dispute is not over what the statutes say, but what they plainly do not say—how we are to treat a nonemployee spouse's marital interest in a deferred employment benefit plan when that spouse is murdered by the employee spouse. Bradley would have us end our inquiry at this point, with a conclusion that because the legislature did not create an exception for the circumstance before us, there is no basis on which a court may conclude that Diane's interest did not terminate on her death. We disagree. Our conclusion, however, does not derive from consulting extrinsic sources to ascertain what the legislature might have intended in this circumstance; rather, we base our decision on an equitable principle that the Wisconsin Supreme Court has never hesitated to apply in situations when a mur-

derer claims an interest in property acquired as a result of the victim's death.[3]

¶ 7. Wisconsin courts have long been committed to the principle that a murderer should not be permitted to profit from his or her crime. The supreme court articulated this principle in 1927, when it stated:

> The equitable doctrine that a man shall not profit by his own wrong dates back centuries in the history of the common law, and is as old as equity itself. It is recognized, as far as we are able to determine, in the laws of all civilized communities. It lies at the foundation of every religious faith. . . . It is vitally essential to the administration of justice, and a careful search of our Statutes fails to reveal that it was ever modified or abrogated. It therefore exists at the present day in Wisconsin, with all the force which it possessed throughout the ages. . . .

---

[3] Although we conclude that the issue in this appeal cannot be resolved by consulting extrinsic aids to statutory interpretation, we have endeavored to discover if there is any indication in the legislative history of §§ 766.31(3) and 766.62(5), STATS., that the legislature specifically rejected the creation of an exception for interspousal murder, similar to those which it has enacted regarding other property transfers at death. The terminable interest rule implements a legislative policy decision "to assure an employee spouse full access to benefits in a deferred employment benefit plan during that spouse's retirement years if he or she is predeceased by the nonemployee spouse." *See* KEITH A. CHRISTIANSEN, MARITAL PROPERTY IN WISCONSIN § 2.102 (1990). The terminable interest rule thus guards against testamentary dispositions by the nonemployee spouse of "any part of a deferred employment benefit plan attributable to the employment of an employee spouse." *Id.* We have been unable to locate any evidence that the issue presently before us arose during the consideration and enactment of these marital property provisions.

*Estate of Wilkins*, 192 Wis. 111, 119, 211 N.W. 652, 655–56 (1927), *overruled in part by Will of Wilson*, 5 Wis. 2d 178, 92 N.W.2d 282 (1958). The court, accordingly, concluded in *Wilkins* that a murderer should not be permitted to take under his victim's will.

¶ 8. Twenty-five years later, the court again applied the principle, this time to the murder of one joint tenant by another. *See Estate of King*, 261 Wis. 266, 52 N.W.2d 885 (1952). The court in *King* refused to allow the murderer to enforce his right of survivorship in jointly-held property. The court has subsequently abandoned its reasoning in *King,* under which the victim's estate acquired the whole of the joint property. *See id.* at 274, 52 N.W.2d at 889. It continues to adhere, however, to the basic principle that a murderer should not acquire his victim's interest in joint property, concluding that:

> "the most equitable [result] . . . can be justified upon the theory that the murder operates as a severance of the joint tenancy resulting in a tenancy in common whereby the murderer retains ownership to an undivided one-half interest, but gains no title in, or enjoyment of, the other half, which other half vests in the heirs at law and next of kin of the murdered joint tenant."

*Estate of Safran*, 102 Wis. 2d 79, 101, 306 N.W.2d 27, 38 (1981) (citation omitted).

¶ 9. The supreme court has also clarified since its opinion in *King* that the proper analysis to be applied to bequests is based on principles of equity, resulting in the imposition of a constructive trust, which provides greater flexibility for a court to achieve a just result. *See Will of Wilson*, 5 Wis. 2d 178, 183, 92 N.W.2d 282, 285 (1958). And, although its reasoning has been

refined, the court reaffirmed that it "is firmly committed to the principle that a murderer will not be permitted to profit by his crime." *Id.* at 180, 92 N.W.2d at 284. The constructive trust approach adopted in *Wilson* serves to avoid conflict with statutory provisions regarding how wills may be revoked, and it is based upon the theory of unjust enrichment, which compels that a murderer " 'surrender the profits of his crime.' " *See Safran,* 102 Wis. 2d at 85, 306 N.W.2d at 30 (citation omitted).

¶ 10. The legislature in 1982 codified this common law principle with respect to several specific types of property transfers at death.[4] Section 700.17(2)(b), STATS., 1993–94, provides that when one joint tenant kills another, the joint tenancy is severed and the killer loses the right of survivorship in the decedent's property. Section 852.01(2m), STATS., 1993–94, provides that when a person is murdered by someone who would otherwise be an heir, the victim's estate passes as if the killer predeceased the decedent. Section 853.11(3m), STATS., 1993–94, in turn, establishes a similar disposition scheme for will beneficiaries. Finally, §§ 632.485, 895.43, and 895.435, STATS., 1993–94, ensure in similar fashion that a murderer does not "receive any benefit" from life insurance policies, or from other contracts or death benefits, as a result of a death he or she intentionally causes.

---

[4] *See* Laws of 1981, ch. 228. The statutes discussed in this paragraph were amended in 1997 to refer over to a newly created provision governing the distribution of property a "killer" might otherwise acquire through an unlawful and intentional killing. *See* 1997 Wis. Act 188, §§ 13, 109, 139, 175, 231 and 232; and § 854.14, STATS., 1997–98. Section 854.14, STATS., applies only to deaths occurring after January 1, 1999, and is therefore inapplicable to the present facts. *See* 1997 Wis. Act 188, § 233.

¶ 11. We acknowledge that the legislature did not adopt a provision similar to the foregoing that addresses the disposition of an employee spouse's pension when that spouse kills the nonemployee spouse.[5] Bradley insists that the absence of a statutory provision indicates that the legislature was unwilling to negate the operation of the terminable interest rule as set forth in §§ 766.31(3) and 766.62(5), STATS., on the present facts. We conclude, however, that the absence suggests only that the legislature failed to contemplate this circumstance when it enacted the terminal interest rule for employee pensions in the marital property act. We view the legislative enactments described above, as well as the recent creation of § 854.14, STATS., 1997–98, as an indication of the legislature's willingness to foster the public policy embodied in the common law principle that a murderer should not profit from his or her crime. (See footnotes 4 and 5.) Finally, we note that the absence of statutes creating exceptions for death transfers of property from which a murderer might benefit did not prevent the supreme court from applying common law equitable principles to bequests and joint tenancies. Thus, we conclude that the legislature's silence on the issue before us does not prevent us

---

[5] The provisions of § 854.14, STATS., 1997–98, were not effective at the time of Diane's death in 1996. See n.4 above. Under § 854.14(2)(c), the "unlawful and intentional killing of the decedent . . . *[r]evokes every statutory right or benefit* to which the killer may have been entitled by reason of the decedent's death." *Id.* (emphasis added). Because the new statute does not apply to Diane's death, and because we decide the present case on common law principles, we do not address whether the statute addresses the termination of a marital property interest under §§ 766.31(3) and 766.62(5), STATS., which results from an interspousal murder.

from doing likewise with respect to the terminal interest rule of §§ 766.31(3) and 766.62(5), STATS.

¶ 12. We conclude that the common law principle that murderers should not profit from their crimes applies to the facts and statutes presently before us. We must next determine if the trial court fashioned the proper remedy by imposing a constructive trust on what it deemed to be Diane's marital property interest in Bradley's pension. We conclude that it did. The supreme court, in its most recent application of the principle, endorsed two possible rationales for depriving Bradley of any benefit from the termination of Diane's interest in his pension. *See Estate of Safran*, 102 Wis. 2d 79, 306 N.W.2d 27 (1981). In dealing with joint tenancy property, the court concluded that the murder severed that tenancy, creating in its place a tenancy in common, with the result that title to the victim's undivided one-half interest "vests in the heirs at law and next of kin of the murdered joint tenant." *Safran*, 102 Wis. 2d at 101, 306 N.W.2d at 38. With respect to a will bequest, however, title is considered to pass to the murderer, subject, however, to a constructive trust to prevent the unjust enrichment of a wrongdoer. *See id.* at 85, 306 N.W.2d at 30.

¶ 13. We can envision an argument that Bradley's murder of Diane should be deemed to have effected a divorce simultaneously with Diane's death, thereby vesting title to her marital property interest in the pension in her estate. We believe the rationale for imposing a constructive trust is much stronger, however. Had the marriage ended in divorce prior to Diane's death, her interest in Bradley's pension would have been determined under § 767.255, STATS., not § 766.62, STATS. *See Mausing v. Mausing*, 146 Wis. 2d 92, 99, 429 N.W.2d 768, 771 (1988) (holding that the

marital property act did not change "the equitable distribution principles set forth in sec. 767.255, STATS."). Thus, a division of the pension in a divorce may have resulted in Diane receiving a greater or lesser portion of the pension than that which constituted her marital property interest under § 766.62, STATS. *Cf. Rodak v. Rodak*, 150 Wis. 2d 624, 630, 442 N.W.2d 489, 492 (Ct. App. 1989) (concluding that "a pension plan relating to employment which spans the date of marriage . . . is a marital asset and is subject to division pursuant to sec. 767.255").

¶ 14. Moreover, as we have discussed, the legislature has clearly expressed its intent that when a marriage terminates because of the death of a nonemployee spouse, that spouse's interest in the employee spouse's pension is extinguished. Just as imposing a constructive trust on will bequests is viewed as not interfering with statutory directives regarding how wills may be revoked, *see Safran*, 102 Wis. 2d at 85, 306 N.W.2d at 30, the imposition of a constructive trust on what had been Diane's interest in Bradley's pension prior to her death does not directly contravene §§ 766.31(3) and 766.62(5), STATS. Under this rationale, Diane's interest did indeed terminate, and Bradley acquired full ownership of the pension on her death, but equity intervenes to prevent his enjoyment of any benefit from the murder.

¶ 15. Finally, the constructive trust approach "affords a court of equity greater flexibility in arriving at a just result which does not defeat the intent of the deceased." *See Wilson*, 5 Wis. 2d at 183, 92 N.W.2d at 285. The legislature, too, has endorsed the exercise of judicial discretion in determining the disposition of property affected by an intentional killing. *See* § 854.14(6), STATS., 1997–98 (providing that "[t]his sec-

tion does not apply if . . . [t]he court finds that, under the factual situation created by the killing, the decedent's wishes would best be carried out by means of another disposition of the property"). The appealed order provides that the trial court "retains jurisdiction to supervise and enforce the payment of retirement benefits" with respect to the portion of Bradley's pension on which the trust was imposed. The benefits may ultimately be ordered paid to Diane's children in equal shares, which apparently would be the result if the pension interest were distributed as a part of her estate. (See footnote 2.) That result is not mandatory, however, as it would be if we concluded that Diane's interest had not in fact terminated upon her death.

¶ 16. Consequently, we follow the reasoning set forth in *Wilson* and affirm the trial court's imposition of a constructive trust on Diane's marital property interest in Bradley's pension. Bradley argues, however, that a constructive trust cannot be imposed on a portion of his pension because the requirements for its imposition have not been satisfied. The supreme court has concluded that a constructive trust may be imposed only if (1) title to the property is held by someone who "in equity and good conscience should not be entitled to beneficial enjoyment," and (2) title was obtained through "fraud, duress, . . . commission of a wrong, or . . . any form of unconscionable conduct." *See Wilharms v. Wilharms*, 93 Wis. 2d 671, 679, 287 N.W.2d 779, 783 (1980). Bradley contends that the second requirement has not been met because he has not "obtained" title to Diane's property, in that the entirety of the pension plan lawfully belonged to him prior to the murder. We disagree.

¶ 17. This court has recognized a distinction between property acquired by a murderer *as a conse-*

*quence of* a wrongful act and property lawfully acquired by the murderer *prior to* such an act. *See Krueger v. Rodenberg*, 190 Wis. 2d 367, 379, 527 N.W.2d 381, 386 (Ct. App. 1994). In *Krueger*, we relied on comments to § 187 of the RESTATEMENT OF RESTITUTION which state that "[a]lthough [a] murderer is not permitted to keep property which he acquires by the murder, he will not be deprived of property which he does not acquire through the murder. . . . [A] murderer is not deprived of property lawfully acquired by him, but is merely prevented from acquiring [a] beneficial interest in property through his unlawful act." *Krueger*, 190 Wis. 2d at 379–80, 527 N.W.2d at 386–87 (citing RESTATE-MENT OF RESTITUTION § 187 cmt. a and c (1937)).

¶ 18. We conclude that our holding in *Krueger* is of no assistance to Bradley on the present facts. The property at issue in *Krueger* was "predetermination date property, [which] is treated by the Wisconsin Marital Property Act as if it were [the murderer's] individual property during the marriage." *Krueger*, 190 Wis. 2d at 381, 527 N.W.2d at 387. Here, Bradley's pension constituted marital property, and Diane retained an interest in a portion of the pension until the instant of her death. *See* § 766.62(1)(a), STATS. ("[A] deferred employment benefit attributable to employment of a spouse occurring after the determination date is marital property."). Bradley obtained Diane's interest as a consequence of his killing her. Section 188 of the RESTATEMENT OF RESTITUTION provides that "[w]here two persons have an interest in property and the interest of one of them is enlarged by his murder of the other, to the extent to which it is enlarged he holds it upon a constructive trust for the estate of the other." We conclude that this is precisely the circumstance

before us. The RESTATEMENT OF RESTITUTION does not contradict, rather it supports, our disposition.

¶ 19. Bradley also argues, for the first time in his reply brief, that the trial court erred in determining that Diane's marital property interest in his pension amounted to an undivided one-half interest. Section 766.62(2), STATS., provides as follows:

> A deferred employment benefit attributable to employment of a spouse occurring while the spouse is married and partly before and partly after the determination date is mixed property. The marital property component of that mixed property is the amount which results from multiplying the entire benefit by a fraction, the numerator of which is the period of employment giving rise to the benefit that occurred after the determination date and during marriage and the denominator of which is the total period of employment giving rise to the benefit.

Bradley asserts that Diane's interest must be determined by applying this formula which considers both the length of the marriage and the number of years of employment which preceded marriage. As we have noted, however, this argument was not raised in Bradley's opening brief. We do not, as a general rule, address issues raised for the first time in a reply brief, and we will not do so here. *See Estate of Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508, 512 (1981).

¶ 20. A final issue remains. Diane's children assert that Bradley's appeal was frivolous, and they move this court to award attorney's fees and costs under RULE 809.25(3)(c)2, STATS. In order for us to find Bradley's appeal frivolous under the cited rule, we must conclude that Bradley or his attorney knew, or should have known, that his appeal "was without any reasonable basis in law or equity and could not be sup-

ported by a good faith argument for an extension, modification, or reversal of existing law." *Id.* This standard is an objective one, based upon what a reasonable attorney would have, or should have, known under the same or similar circumstances. *See Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 240–41, 517 N.W.2d 658, 665–66 (1994). We are reluctant to find the legal arguments of counsel frivolous and will resolve any doubts as to the frivolousness of an action in favor of finding a claim nonfrivolous. *See id.* at 235, 517 N.W.2d at 663.

¶ 21. The issue presented in this appeal is one of first impression, involving the application of common law principles to statutes enacted well after most of the relevant precedents were decided. Although we have had little difficulty in deciding that the principles should apply to the operation of §§ 766.31(3) and 766.62(5), STATS., we cannot say that Bradley's arguments are without any reasonable basis in law or equity. Accordingly, we deny the motion for sanctions.

## CONCLUSION

¶ 22. For the reasons discussed above, we affirm the order of the circuit court imposing a constructive trust on Diane's interest in Bradley's pension. We deny, however, the motion of Diane's children seeking attorney's fees and costs under RULE 809.25(3)(c)2, STATS.

*By the Court.*—Order affirmed.